Joseph P. **FITCHIK**, Plaintiff,

v.

**NEW JERSEY TRANSIT RAIL OPERATIONS, INC.,** Defendant.

Civ. A. No. 86–3060.

United States District Court, D. New Jersey.

Jan. 26, 1988.

Grace A. Dennigan, Deputy Atty. Gen., State of New Jersey, Trenton, N.J., for defendant New Jersey Transit Rail Operations, Inc.

Lawrence A. Katz, Coffey & Kaye, Bala Cynwyd, Pd., for plaintiff Joseph P. Fitchik.

## OPINION

WOLIN, District Judge.

Defendant by formal motion belatedly moves to dismiss plaintiff's complaint after the entry of the final pretrial order and one week in advance of the scheduled trial date. At issue is whether the United States District Court has jurisdiction to entertain and dispose of plaintiff's personal injury action or is prohibited therefrom by the doctrine of sovereign immunity embodied in the Eleventh Amendment. Because of the substantial nature of the question involved and the absence of undue prejudice by its determination, the Court finds that neither the Federal Employers' Liability Act, nor the Federal Safety Appliance Act authorize the plaintiff, who is a State employee, to sue the State of New Jersey in Federal Court.

New Jersey Transit Rail Operations, Inc., is a corporation duly organized and existing under and by virtue of the laws of the State of New Jersey. It operates as a common carrier both within and without the State of New Jersey and is engaged in interstate commerce as that phrase is normally understood. Plaintiff is a citizen and resident of New Jersey. On or about December 30, 1985 he was employed by defendant as a trainman at its Hoboken facility and suffered chronic, recurrent and permanent personal injury when the train struck a bumper block due to its inability to brake and stop.

The relevant procedural history reveals that a Complaint was filed in the United States District Court on August 1, 1986 alleging jurisdiction pursuant to the Federal Employers' Liability Act, 45 U.S.C. § 51, *et seq.* (FELA) and The Federal Safety Appliance Act, 45 U.S.C., § 1–16 inclusive.

Defendant answered the complaint on September 16, 1986 and participated in a pretrial conference on December 11, 1987. In neither the answer to the complaint nor the final pretrial order was the issue of jurisdiction questioned or challenged despite the June 25, 1987 decision in *Welch v. State Department of Highways and Public Transportation, et al.,* 483 U.S. ——, 107 S.Ct. 2941, 97 L.Ed.2d 389, (1987). Yet, the presence of R. 12(h)(3) of the Federal Rules of Civil Procedure mandates dismissal of an action where the Court lacks jurisdiction of the subject matter.

The question of sovereign immunity and the interpretation of the Eleventh Amendment is not an issue *sui generis* to this district. In both reported and unreported decisions, this district has had multiple opportunities under varying circumstances to engage in the interpretative process and has uniformly held that a suit by one or more private parties seeking to impose liabilities, resulting in damages to be paid from public funds in the State Treasury, implicates and is barred by the Eleventh Amendment. *Gibson–Homans Co. v. New Jersey Transit Corp.,* 560 F.Supp. 110, 113 (D.N.J.1982) *Saddle River Tours v. New Jersey Department of Transportation, et al.* (Civ. No. 83–1776) (D.N.J., October 31, 1983) *aff'd.* 745 F.2d 48 (3rd Cir.1984); *Hightower v. New Jersey Transit Rail Operations, Inc.,* (Civ. No. 84–1268) (D.N.J., August 27, 1984); *Dunn v. New Jersey Transit Corporation, N.J. Transit Rail Operations, Inc.,* 681 F.Supp. 246 (D.N.J., 1987). Each of these decisions was bottomed on the theory that New Jersey Transit and its progeny are the *alter egos* of the State of New Jersey and, therefore, immune from suit in the Federal Courts. No more persuasive statement of its character or purpose has been articulated with greater clarity than that reported in *Gibson–Homans, supra:*

"First, New Jersey Transit is by statute a State instrumentality performing an

essential governmental function. As such, it has been granted complete immunity from state taxation. Second, the corporation does not have substantial autonomy from the state government in carrying out its functions. While the legislature has declared that the corporation is independent of any supervision or control by the Department of Transportation, it has also made the Commissioner of Transportation chairman of New Jersey Transit's governing board and has given him the responsibility of reviewing the corporation's budget. Moreover, whatever the relationship of New Jersey Transit to the Department of Transportation, it is clear that the corporation is not autonomous from the Executive Branch as a whole given Governor's power to appoint all of the members of the governing board, to remove them for cause and to veto any decision made by the board.

Third, we find that any judgment against New Jersey Transit will have a financial impact on the state. While the state has disclaimed any responsibility for the debts and liabilities of the corporation, it has in fact appropriated over $100 million to New Jersey Transit for the current fiscal year. As New Jersey Transit points out, without contradiction by plaintiff, the fiscal realities of operating a public transportation system coupled with the inability of the corporation to incur debt or to raise money through sale of its own bonds, dictates the continuation of appropriations of state funds to New Jersey Transit. This substantial and continuing contribution of state money to New Jersey Transit's budget is a sufficiently direct effect on the State Treasury to support a finding that New Jersey Transit is the alter ego of New Jersey. *Fitzpatrick v. Bitzer*, 519 F.2d 559, 564–65 (2nd Cir., 1975), *rev'd on other grounds*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). This conclusion is further supported by the fact that all funds of New Jersey Transit are, by definition, public monies, since they may be placed in the New Jersey Cash Management Fund.

Finally, we note that there are numerous indicia, not explicitly set forth in *Urbano* [*v. Board of Managers of New Jersey State Prison*, 415 F.2d 247 (3rd Cir. 1969)] and *Blake* [*v. Kline*, 612 F.2d 718 (3rd Cir.1979)] that New Jersey Transit is an arm of the state. Thus, it has been given the power of eminent domain, suits against it are governed by the New Jersey Contractual Liability Act and the New Jersey Tort Claims Act, it is within the jurisdiction of the Public Employees Relations Commission, it is subject to the New Jersey Administrative Procedure Act and Open Public Meetings Act, and it has been represented in this litigation, as it must be by statute, by the Attorney General's Office." 560 F.Supp. at 113–114.

The Eleventh Amendment to the Constitution of the United States expressly provides that:

"The Judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State".

Although this precisely worded constitutional passage omits express reference to a citizen bringing suit against his/her own State its significance lies in its affirmation of the fundamental principle of sovereign immunity.

■ For the greater part of this century, it has been unequivocally established that the Eleventh Amendment bars a citizen from litigating against the citizen's own State in Federal Court. *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Exceptions to this principle, such as when a state waives its immunity and consents to suit in the Federal Court, or where Congress demonstrates its intention to abrogate the State's constitutionality secured immunity from suit, are generally only found where such exception is expressly stated by unmistakably clear language. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662

(1974); *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985). Moreover, the immunity of an unconsenting State does not disappear when claims are asserted against state agencies, instrumentalities, and officers where the state itself is truly the real party in interest. *Edelman v. Jordan, supra*, 415 U.S.at 652, 94 S.Ct. at 1350.

Overshadowing these considerations is the case of *Parden v. Terminal Railway of Ala. Docks Dept.*, 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964), a decision that permitted an employee of a state-operated railroad company to bring an action in Federal Court under FELA absent (1) an express waiver to suit and (2) unmistakably clear *statutory* language abrogating the States' constitutionally secured immunity from suit in Federal Court. (emphasis supplied). Its holding, however, was premised on a misinterpretation of Congressional resolve to make FELA applicable to "every common carrier by railroad while engaging in commerce between any of the several States." *Welch v. Department of Highways & Public Transportation, et al.*, 483 U.S. ——, ——, 107 S.Ct. 2941, 2947, 97 L.Ed.2d 389, 398 (1987). Citing § 1, 35 Stat. 65, 45 U.S.C. § 51. Through this misjudgment it erroneously concluded that the State of Alabama had waived its Eleventh Amendment immunity. *Parden, supra*, 377 U.S. at 186, 84 S.Ct. at 1209. Assuredly, to this limited extent, *Parden* is no longer of precedental value. *Welch, supra* 483 U.S. at ——, 107 S.Ct. at 2948, 97 L.Ed.2d at 399. *Employees v. Missouri Department of Public Health and Welfare*, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed. 2d 251 (1973), *Atascadero State Hospital v. Scanlon, supra.*, and *Pennhurst, supra*, all reiterate "that an abrogation of Eleventh Amendment immunity by Congress must be expressed in unmistakably clear language ...".

Despite the wealth of constitutional authority reaffirming the Eleventh Amendment's containment of a broad constitutional principle of sovereign immunity, it was not until the recent case of *Welch v. Department of Highways & Public Transportation, et al., supra*, that a majority of the Supreme Court concluded that the Eleventh Amendment bars a state employee from suing the State in Federal Court under the Jones Act, 46 U.S.C.S.App. § 688. In *Welch, supra*, an employee of the Texas State Highway and Public Transportation Department was injured while working on a state-operated ferry dock. Her suit against the department and state was filed in the United States District Court. The District Court dismissed the action as barred by the Eleventh Amendment (533 F.Supp. 403). A Fifth Circuit Panel of the United States Court of Appeals initially reversed, (739 F.2d 1034) but on rehearing *en banc* the Court of Appeals affirmed the District Court's judgment on two grounds:

1) There was no unmistakable expression in the Jones Act of an intention to abrogate the States' Eleventh Amendment immunity from suit in Federal Court, and;

2) Texas had not consented to suit. (780 F.2d 1268).

Ultimately when the Supreme Court granted certiorari, the questions presented in the petition were:

(1) Whether the State Department of Highways and the State of Texas are immune from a Jones Act suit in U.S. District Court by a state employee/seaman by operation of the Eleventh Amendment to the U.S. Constitution.

(2) Whether the doctrine of implied waiver of sovereign immunity as set forth in *Parden v. Terminal R.R. Co.*, 377 U.S. 184 [84 S.Ct. 1207, 12 L.Ed.2d 233] (1964) is still viable.

*Welch, supra*, 483 U.S. at ——, fn. 4, 107 S.Ct. at 2946, fn. 4, 97 L.Ed.2d at 397, fn. 4.

The significance of the *Welch* case is that although the Jones Act applied the remedial provisions of the FELA to seaman, a majority of the court recognized that in neither of these pieces of legislation did Congress expressly abrogate states' immunity. A recitation of the pertinent Jones Act language is appropriate for understanding;

"Any seaman who shall suffer personal injury in the course of his employment

may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply ... Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located." 46 USC § 688 [46 U.S.C.S.App. § 688(a)].

Though the Act extends to any seaman and places jurisdiction in such actions with the district wherein the employer resides, the majority of the Court did not find the unmistakable statutory language necessary to permit the State to be sued in Federal Court under the Jones Act. Its rejection of language of general authorization references the antecedent doctrine that abjures waiver of sovereign immunity without unequivocally clear statutory language.

From *Welch, supra,* we discern that a general authorization for suit in federal court is not the kind of unequivocal statutory language sufficient to abrogate the states' Eleventh Amendment immunity from federal suit; that the general language of the Jones Act does not authorize suits against the states in federal court; that the FELA does not authorize suits against the states in federal court; and lastly the Eleventh Amendment prevents a state from being sued in federal court by one of its own citizens, unless the state itself consents to be sued. As stated in *American Fire & Casualty Co. v. Finn,* 341 U.S. 6, 17, 71 S.Ct. 534, 542, 95 L.Ed. 702 (1951), "[t]he jurisdiction of the federal courts is carefully guarded against expansion by judicial interpretation...."

Based on the jurisdictional authorities cited *infra,* plaintiff's cause of action pursuant to FELA and the Federal Safety Applicance Act offends the sovereign immunity accorded to the States' by the Eleventh Amendment. Each statute lacks the enabling language necessary to sustain federal jurisdiction. Since plaintiff is a citizen and resident of the State whose *alter ego* he has sued and since the record is manifestly barren of a waiver of immunity this Court finds it lacks jurisdiction over the subject matter.

Accordingly, the application to dismiss plaintiff's personal injury action is granted for the reasons asserted.